U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2026 AUG -6 P 3: 35

BY_____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

SHOHREH GHASEMI,                      )
                                      )
        Petitioner,                   )
                                      )
    v.                                )          Case No. 2:26-cv-250
                                      )
DONALD J. TRUMP et al.,               )
                                      )
        Respondents.                  )

**ORDER ON PETITION FOR HABEAS CORPUS**
**(Doc. 1)**

Petitioner Shohreh Ghasemi, a resident of Atlanta, Georgia and a citizen of Iran, was transferred from the custody of the U.S. Marshals Service to that of U.S. Immigration and Customs Enforcement on July 21, 2026. She is currently detained at Chittenden Regional Correctional Facility in Vermont. (Doc. 1 ¶ 17.) On July 21, 2026, Ms. Ghasemi filed a habeas petition challenging her detention without the opportunity for bond as a violation of due process and 8 U.S.C. § 1226(a). (Doc. 1.) She concurrently filed an Emergency Motion for a Temporary Restraining Order, asking the court to order that she not be removed from the state of Vermont during the pendency of this case. (Doc. 2.) The court granted the TRO (Doc. 4), extended it after a hearing on the motion (Doc. 8), and set a briefing schedule. The parties have now completed their briefing on the petition for habeas corpus.

**Background**

The following facts are drawn from the Petition and the documents attached to the parties' filings.

Ms. Ghasemi is a citizen of Iran who has lived in the United States on and off since 2014. (Doc. 1 ¶¶ 1, 26–40.) She originally entered as part of a J-1 Workforce Development Exchange

Visitor Program. Since then, she has held several different forms of temporary legal status. (*Id.* ¶¶ 26–30, 42.) She is recognized as "an accomplished oral and maxillofacial surgeon, educator, researcher, author, and . . . speaker." (*Id.* ¶ 1).

In 2022, Dr. Ghasemi applied for legal permanent resident status based on her employment. (Doc. 10-1 at 1.) The application required her to file two documents, an I-140 Petition for Alien Worker and a Form I-485 Application to Register Permanent Residents or Adjust Status. Based on her pending application for legal permanent residence, Ms. Ghasemi received advance parole (Doc. 1 ¶ 42; Doc. 1-2)—a document that allows a noncitizen to travel outside the United States and seek parole upon her return, *see* 8 C.F.R. §§ 212.5, 245.2(a)(4)(ii)(B). Ms. Ghasemi's parole document stated that it was valid from March 8, 2024, to March 7, 2029. (Doc. 1-2.) Notably, however, "a decision authorizing advance parole does not preclude denying parole when the [noncitizen] actually arrives at the port-of-entry, should DHS determine that parole is no longer warranted." *Ibragimov v. Gonzales*, 476 F.3d 125, 136 n.15 (2d Cir. 2007).

Using her advance parole document—and relying on previous grants of advance parole—Ms. Ghasemi has returned to Iran on a handful of occasions since moving to the United States. During a trip in 2023, the Iranian government detained Ms. Ghasemi for political reasons for approximately one month. (Doc. 1 ¶ 34.) She left Iran upon release from prison. (*Id.* ¶ 36.) Dr. Ghasemi returned to Iran in April 2024 to commemorate the one-year anniversary of her sister's death. (*Id.* ¶¶ 37–38.) She has not returned since.

On February 20, 2025, United States Citizenship and Immigration Services ("USCIS") denied Ms. Ghasemi's I-140 on the basis of fraud, as Ms. Ghasemi had used a false date of birth. (*Id.* at 2.) On April 29, 2025, USCIS denied the I-485 on the same ground and on the basis that

it had denied the I-140, approval of which was a prerequisite to the approval of the I-485. USCIS also denied Ms. Ghasemi's appeal of the I-140 denial. (Doc. 10-2.)  There is no appeal from the denial of an I-485, though an applicant can file a motion to reopen or reconsider. (Doc. 10-1 at 3.)  Ms. Ghasemi has indicated that her I-485 "remains under administrative appeal and has not become final." (Doc. 1 ¶ 41.)

On May 25, 2026, Ms. Ghasemi traveled to Toronto, Canada to attend a professional speaking event, where she presented about medicine within her field of expertise. (*Id.* ¶ 43.)  On May 27, 2026, she went to the Lester B. Pearson Internation Airport preclearance facility in Ontario, Canada and presented her passport and parole document. (*Id.* ¶ 47.)  She was denied entry and was not provided with a reason. (*Id.*)  Later that same day, Ms. Ghasemi went to the Rainbow Bridge Port of Entry in Niagara Falls, New York and again presented her passport and parole document. (*Id.* ¶ 48.)  She was once again denied entry.  On June 16, 2026, Ms. Ghasemi attempted to return to the United States for a third time, presenting herself and her documents at the Port Huron Port of Entry in Algonac, Michigan. (*Id.* ¶ 49.)

The Customs and Border Protection ("CPB") personnel at Port Huron concluded that Ms. Ghasemi was inadmissible on two grounds.  First, they concluded that she had sought admission to the United States by fraud or willful misrepresentation of a material fact in violation of 8 U.S.C. § 1182(a)(6)(C)(i), specifically that she had produced documents with a false date of birth. (Doc. 10-3.)  Second, she was not in possession of a valid, unexpired immigrant visa, reentry permit, border cross card, or other valid entry document in violation of 8 U.S.C. § 1182(a)(7)(A)(i)(I). (*Id.*)  Ms. Ghasemi alleges that she mentioned her fear of returning to Iran during the encounter but was never afforded a credible fear interview, as provided for by 8 U.S.C. § 1225(b)(1)(A)(ii).  Instead, CBP issued her a Form I-860, Notice and Order of

3

Expedited Removal, under 8 U.S.C. § 1225(b)(1)(A)(i) and effected her removal by "[e]scort[ing] [her] to Canada." (*Id.* at 4.)

Ten days later, on June 26, 2026, Ms. Ghasemi unlawfully reentered the United States near Derby Line, Vermont. (Doc. 1 ¶¶ 52–58.) CBP agents quickly encountered Ms. Ghasemi and arrested her. (*Id.* ¶¶ 53–54.) During the encounter, CBP officials asked Ms. Ghasemi if she feared returning to Iran. She replied, "I was a prisoner in Iran, if I go back I don't know what will happen." (Doc. 11 at 5.) Notwithstanding her statement, CBP reinstated her expedited removal order under 8 U.S.C. § 1231(a)(5) and failed to provide her with a reasonable fear interview as called for under 8 C.F.R. § 241.8(e). (Doc. 10-4.) Ms. Ghasemi was also charged with illegal reentry, to which she pled guilty on July 21, 2026. (Doc. 1 ¶ 58.) She was sentenced to time served and returned to ICE custody. (*Id.* ¶ 59.) Ms. Ghasemi filed this petition for habeas corpus the same day. (Doc. 1.)

On August 5, 2026, while this case was pending, Ms. Ghasemi received a credible fear interview.

### Statutory and Regulatory Framework

The Immigration and Nationality Act ("INA") provides for the detention of certain noncitizens during the pendency of their immigration proceedings and while they are awaiting removal. For noncitizens who do not have an order of removal, detention is governed by 8 U.S.C. § 1225(b), § 1226(a), or § 1226(c). Generally, § 1225(b) applies to "arriving" noncitizens or "applicants for admission" who are "seeking admission." *See* 8 U.S.C. § 1225(b)(1)(A)(i), (b)(2)(A). Section 1226(c) governs the detention of noncitizens apprehended within the United States on criminal grounds. Section 1226(a) is a catchall provision that governs the detention of any other noncitizen apprehended by immigration enforcement and is

4

generally understood to apply to noncitizens "already present in the United States," i.e., no longer at the border. *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018); *see also Barbosa da Cunha v. Freden*, 175 F.4th 61, 69 (2d Cir. 2026) ("Section 1225(b)(2)(A) does not apply to . . . noncitizens . . . who are present in the United States after entering the country without inspection and admission, and who were not apprehended while entering the country or shortly thereafter.") Section 1226(a) creates a statutory right to a bond hearing before an immigration judge, but § 1225(b) and § 1226(c) call for mandatory detention. *Id.* at 302, 305–06.

For noncitizens with a final order of removal, § 1231(a)(2) governs their detention. Under that statute, the noncitizen is subject to mandatory detention during a 90-day "removal period," which is subject to extension under certain circumstances. 8 U.S.C. § 1231(a)(1)–(2). If the government does not remove the noncitizen within the 90-day period, the noncitizen "shall be subject to supervision under regulations prescribed by the Attorney General." *Id.* § 1231(a)(3). Section 1231(a)(2) is also the detention authority for noncitizens with reinstated removal orders. *Johnson v. Guzman Chavez*, 594 U.S. 523, 535 (2021).

## Analysis

The primary dispute in this case is whether Ms. Ghasemi is subject to mandatory detention or discretionary detention. The Government contends that she is subject to mandatory detention under § 1225(b)(1) because she was issued an expedited order of removal. (Doc. 10 at 6–7.) Ms. Ghasemi maintains that her detention is governed by § 1226(a) because her expedited removal order and reinstated removal order are both legally invalid. She argues that she is entitled to a bond hearing before an immigration officer or immediate release by this court. She does not, however, ask the court to vacate her reinstated order or the underlying expedited removal order.

5

The parties' arguments raise issues about the scope of this court's jurisdiction to review—and potentially invalidate—the two removal orders in this case. Typically, only circuit courts may review orders of removal via a petition for review. 8 U.S.C. § 1252(a)(5). That includes reinstated removal orders. *See generally Garcia-Villeda v. Mukasey*, 531 F.3d 141 (2d Cir. 2008), *impliedly overruled on other grounds*, *Bhaktibhai-Patel*, 32 F.4th 180 (2d Cir. 2022); *see also Debeato v. Att'y Gen. of U.S.*, 505 F.3d 231, 233 (3d Cir. 2007). Review of *expedited* removal orders, however, is with the appropriate district court in a habeas corpus proceeding. 8 U.S.C. § 1252(e). In such proceedings, the court may consider only the following:

> (A) whether the petitioner is a [noncitizen],
>
> (B) whether the petitioner was ordered removed under . . . section [1225(b)(1)], and
>
> (C) whether the petitioner can prove . . . that the petitioner is a[] [noncitizen] lawfully admitted for permanent residence, has been admitted as a refuge . . . , or has been granted asylum . . . .

8 U.S.C. § 1252(e)(2)(A)–(C). Further,

> In determining whether a[] [noncitizen] has been ordered removed under section 1225(b)(1) of this title, the court's inquiry shall be limited to whether such an order in fact was issued and whether it relates to the petitioner. There shall be no review of whether the [noncitizen] is actually inadmissible or entitled to any relief.

*Id.* § 1252(e)(5).

Section 1252(e) also limits what relief a district court can order in a habeas challenge to an expedited removal order:

> In any case where the court determines that the petitioner—
>
> (A) is a [noncitizen] who was not ordered removed under section 1225(b)(1) of this title, or

6

(B) has demonstrated . . . that the [noncitizen] is . . . lawfully admitted for permanent residence, has been admitted as a refuge . . . , or has been granted asylum . . . , the court may order no remedy or relief other than to require that the petitioner be provided a hearing in accordance with section 1229a of this title. . . .

*Id.* § 1252(e)(4).

Both the Government and Ms. Ghasemi argue that the court's review is governed by § 1252(e). The jurisdictional questions they raise regard the scope of the permissible inquiry under that section, specifically whether the Government's initial failure to provide Ms. Ghasemi with a credible fear interview means that she was not "ordered removed under" section 1225(b), one of the bases for challenging an expedited removal order under § 1225(e)(4). That question itself is fraught, but there is even more to the jurisdictional puzzle. As noted above, review of reinstated removal orders takes place through the petition-for-review process with the circuit courts, but there is a question as to which court has jurisdiction over a challenge to a reinstated order when the underlying order is one for expedited removal.

Courts, including the Second Circuit, generally to agree that the appropriate circuit court has jurisdiction with respect to the propriety of the reinstatement itself—questions regarding "(1) whether the petitioner is a[] [noncitizen]; (2) whether the petitioner was subject to a prior removal order, and (3) whether the petitioner re-entered illegally." *Garcia de Rincon v. Dep't of Homeland Sec.*, 539 F.3d 1133, 1137 (9th Cir. 2008) (citing *Morales-Izquierdo v. Gonzales*, 486 F.3d 484, 495 (9th Cir. 2007) (en banc)); *see also Miller v. Mukasey*, 539 F.3d 159, 164 (2d Cir. 2008) (per curiam) (indicating that the court's review of a reinstatement order is primarily related to whether the petitioner is "(1) a[] [noncitizen] who has (2) reentered the United States illegally after (3) having been removed"). Several circuit courts have also held that they can review constitutional claims and questions of law related to the reinstatement of a

7

removal order. *See Lema v. Holder*, 363 F. App'x 88, 90 (2d. Cir. 2010) (summary order) (collecting cases).

Those cases indicate that this court has no jurisdiction to consider whether the Government has properly reinstated the prior order and, therefore, whether the Government's failure to provide Ms. Ghasemi with a reasonable fear interview renders that order—and her detention—invalid. The court does note, however, that regulations governing reinstated removal orders provide that the reasonable fear interview occurs *after* the order is reinstated. 8 C.F.R. § 238.1(f)(3) ("If the [noncitizen] has requested withholding of removal . . . , the deciding officer shall, upon issuance of a Final Administrative Removal Order, immediately refer the [noncitizen's] case to an asylum officer to conduct a reasonable fear determination . . . ."). The failure to provide a reasonable fear interview does not, therefore, affect the validity of a reinstated removal order. It only affects whether it can be executed. That must necessarily be true given the nature of withholding of removal—the eventual benefit that someone who seeks a reasonable fear interview might obtain—as withholding prevents removal only to the country where the noncitizen fears persecution. 8 U.S.C. § 1231(b)(3). It therefore appears that the merits of a direct attack on the reinstatement proceedings would not be a basis for Ms. Ghasemi's release.

As for jurisdiction to consider the underlying expedited removal order, circuit courts— including the Second Circuit in a summary order—have held that the circuit courts have no jurisdiction to question the validity of the underlying order.[1] *See Becerril v. Holder*, 590 F.

---

[1] Note that this holding is specific to underlying *expedited* removal orders. Some circuit courts have held that § 1252(a)(2)(D) operates to allow review of an underlying removal order if it is challenged on constitutional or legal grounds. *See See Garcia de Rincon*, 539 F.3d at 1138; *Ramirez-Molina v. Ziglar*, 436 F.3d 508, 514 (5th Cir. 2006); *Debeato*, 505 F.3d at 234–235.

App'x 101, 102 (2d Cir. 2015) (summary order); *Garcia de Rincon*, 539 F.3d at 1138–39; *Ochoa-Carrillo v. Gonzales*, 446 F.3d 781 (8th Cir. 2006). As for whether a district court has jurisdiction to consider the underlying expedited removal order, few courts have considered the question, and the ones that have are split. *Garcia de Rincon*, 539 F.3d at 1140 (indicating that, had petitioner contested her reinstated expedited removal order on the permissible grounds listed in § 1252(e)(5), the district court would have had jurisdiction to evaluate the merits of the order); *compare with Ochoa-Carrillo v. Gonzales*, 446 F.3d 781 (8th Cir. 2006) (no district court jurisdiction to review underlying expedited removal order); *Solis-de Patino v. Pitts*, 823 F. Supp. 2d 457, 462 (W.D. Tex. 2011) (same).

If such review does exist, it would likely need to be on due process grounds. Section 1231(a)(5) provides that, when a removal order is reinstated, the original order "is not subject to being reopened or reviewed." In the context of non-expedited removal orders, some circuit courts have held that § 1252(a)(2)(D) operates to allow review of the underlying order. *See supra* note 2. That provision reads as follows:

> Nothing in subparagraph (B) or (C), or in any other provision of this chapter (other than this section) which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section.

8 U.S.C. § 1252(a)(2)(D). Because § 1231(a)(5) is in "this chapter," its jurisdictional bars do not apply to constitutional claims or questions of law raised in a petition for review, thus allowing review of an underlying non-expedited removal order.

Section 1252(a)(2)(D) does not similarly preserve review of an underlying expedited removal order in a habeas petition before a district court. That is because it specifically provides that review of constitutional claims and legal questions is allowed in *a petition for review* before the appropriate circuit court. This case is a habeas challenge before a district court, not a petition

for review. Section 1231(a)(5)'s restriction on reviewing an underlying removal order therefore applies in this case.

Even if this court had jurisdiction to review reinstated expedited removal orders, another jurisdictional roadblock would arise: § 1252(a)(2)(A), as interpreted in *Shunaula v. Holder*, 732 F.3d 143 (2d Cir. 2013). That provision states as follows:

> Notwithstanding any other provision of law . . . no court shall have jurisdiction to review—
>
> (i)    except as provided in subsection (e) of this section, any individual determination or to entertain any other cause or claim arising from or relating to the implementation or operation of an order of removal pursuant to section 1225(b)(1) of this title,
>
> (ii)   except as provided in subsection (e) of this section, a decision by the Attorney General to invoke the provisions of such section,
>
> (iii)  the application of such section to individual [noncitizens], including the determination [whether the noncitizen has a credible fear of persecution], or
>
> (iv)   except as provided in subsection (e) of this section, procedures and policies adopted by the Attorney General to implement the provisions of section 1225(b)(1) of this title.

8 U.S.C. § 1252(a)(2)(A).

In *Shunaula*, the Second Circuit interpreted that provision in the context of the petitioner's challenge to his expedited removal order. He contended that the Second Circuit should vacate the order because he had a valid tourist visa when he attempted to enter the U.S., so the expedited removal statute did not apply to him. The Second Circuit held that the petitioner's challenge fell within the jurisdictional bar because "he allege[d] illegality in the Attorney General's particular decision to remove him and in the specific way his removal was carried out." *Shunaula*, 732 F.3d at 146. *Shunaula* also cited favorably to *Khan v. Holder*, 608 F.3d 325 (7th Cir. 2010), where the Seventh Circuit similarly held that the court lacked

10

jurisdiction "to inquire whether the expedited removal procedure to which the [petitioners] were subjected was properly invoked." *Khan*, 608 F.3d at 329–30. Just as the petitioners in those cases could not challenge DHS's failure to abide by the expedited removal statute, neither can Ms. Ghasemi. As the court in *Khan* stated, the reality of the expedited removal procedure is "troubling" and "fraught with risk of arbitrary, mistaken, or discriminatory behavior," yet courts are not "free to disregard jurisdictional limitations." *Id.* at 329–330.

In a situation like Ms. Ghasemi's, where she was allegedly issued an expedited removal order and swiftly removed from the country without receiving a credible fear interview, there may be an argument that §§ 1231(a)(5) and 1252(a)(2)(A), as applied to her, violate due process. But Ms. Ghasemi has not raised that argument. Even if she had, she would not be entitled to release from detention.[2] That is because Ms. Ghasemi met the criteria for being placed in expedited removal proceedings. So, if the court were to review the underlying removal order and find it invalid, Ms. Ghasemi's case would simply revert to the point where it left off—with her in expedited removal proceedings awaiting a credible fear interview. In that posture, she would be subject to detention under § 1225(b)(1), which provides for mandatory detention leading up to—and after—the credible fear determination. *See* 8 U.S.C. § 1225(b)(1)(B)(ii) (providing that, if a noncitizen demonstrates a credible fear of persecution, the noncitizen "shall be detained for further consideration of the application for asylum"); *see also Jennings v. Rodriguez*, 583 U.S. 281, 302 (2018) (interpreting the word "for" in 8 U.S.C. § 1225(b)(1)(B)(ii) to mean "throughout the completion of applicable proceedings").

---

[2] A successful due process challenge *could* result in Ms. Ghasemi's expedited removal order being vacated, but she has not requested that relief in this case. The court does not comment on the possible success of such a claim.

Nor would her due process arguments prevail to relieve her from mandatory detention. As the Supreme Court has held, "detention during deportation proceedings [i]s a constitutionally valid aspect of the deportation process." *Demore v. Kim*, 538 U.S. 510, 523 (2003). Further, the Supreme Court has held that mandatory detention under § 1225(c) without an initial bond determination does not, on its face, violate a detainee's due process rights. *Id.* at 531. District courts in this circuit have held that the same is true for mandatory detention under § 1225(b)(1). *See Rana v. Genalo*, No. 26 Civ. 849, 2026 WL 1863815, at *7 (S.D.N.Y. June 26, 2026); *Chen v. Almodovar*, No. 25 Civ. 9670, 2026 WL 100761, at *14 (S.D.N.Y. Jan. 14, 2026); *Hernandez v. Noem*, No. 25-CV-10393, 2026 WL 836735, at *4 (S.D.N.Y. Mar. 26, 2026). Ms. Ghasemi has presented no affirmative evidence that the Government has detained her for impermissible punitive reasons, and her detention, which amounts to less than a month in DHS custody,[3] has not lasted long enough to amount to unconstitutionally prolonged detention. *See Chen*, 2026 WL 100761, at *14.

## Conclusion

For the foregoing reasons, the Petition for Habeas Corpus (Doc. 1) is DISMISSED.

Dated at Burlington, in the District of Vermont, this 6th day of August, 2026.

Geoffrey W. Crawford, Judge
United States District Court

---

[3] Ms. Ghasemi was also in custody of the U.S. Marshals Service for 25 days while facing a criminal charge from her unlawful entry.

12